[No. 30183.  Department Two.  August 18, 1947.]

JOHN PLESE, *Appellant,* v. THE DEPARTMENT OF LABOR AND
INDUSTRIES, *Respondent.*[1]

[1]Reported in 183 P. (2d) 1001.

*Durham, Guimont & Durham,* for appellant.

*The Attorney General* and *Theodore M. Ryan, Assistant,* for respondent.

Hill, J.—It is conceded that the appellant is totally incapacitated by reason of silicosis, an industrial disease contracted while he was employed in coal mines of this state.

The respondent, the department of labor and industries, fixed the date of disability due to silicosis as November 29, 1942. Appellant contends that the date of disability is subsequent to December 2, 1942, and fixes February 18, 1943, as the proper date. The anomaly of the disabled workman claiming a later date for disability than that fixed by the department is due to the fact that on December 3, 1942, the effective date of referendum No. 22, an increased rate of compensation became effective.

On an appeal to the superior court from the department's determination of the date of disability, the trial court took the case from the jury and dismissed the appeal.

The question presented here is a very narrow one: Was there sufficient evidence to sustain a finding by the jury that the date of disability was subsequent to December 2, 1942? It would therefore avail nothing for the appellant to show that the department was wrong in fixing the date of November 29, 1942, as the date of disability, unless appellant could also show that such date was subsequent to December 2, 1942.

It is conceded that:

(1) The date of appellant's last exposure to silicosis was November 7, 1941.

(2) Appellant has been totally disabled since November 29, 1942, and has not worked since that date.

(3) Appellant went to the hospital with pneumonia on November 29, 1942, and was hospitalized until December 15, 1942, but he had had some symptoms of silicosis, such as coughing, shortness of breath, and weakness, for several months prior to November 29th.

(4) An X-ray photograph taken December 5, 1942, showed the presence of silicosis and pneumonia.

(5) Appellant filed a claim December 21, 1942, within a week after leaving the hospital, claiming disability resulting from an occupational disease "due to work around galvanizing fumes," stating that he quit work on December 5, 1942, on account of the occupational disease. (This latter date apparently was based on his employer's record showing December 5th as the last date of employment, but the fact is, as indicated above, that appellant did not work subsequent to November 29th.) From the examination made in connection with this claim, it was discovered that appellant had silicosis and that his occupational disease was occasioned by work in the coal mines and not by his work in the shipyards, which was the basis of the claim of December 21, 1942.

(6) An X-ray photograph taken February 9, 1943, disclosed no change in so far as silicosis was concerned from the X ray of December 5th, but the evidence of pneumonia had disappeared.

(7) On February 18, 1943, appellant was examined by Dr. John E. Nelson and a diagnosis of silicosis made. (Dr. Nelson examined the X rays of December 5th and February 9th. From his testimony, it might be assumed that there was another X-ray examination on February 18th, but we believe that he was merely testifying concerning his examination on that date of the photograph made on February 9th; if there was an X ray taken on February 18th, it showed no change, so far as silicosis was concerned, from that of December 5, 1942.)

(8) On August 13, 1943, appellant signed a claim for disability on account of silicosis, which claim contained the following:

"*Date of first exposure*    Fall of 1934. (Worked at Bain mine, Cumberland, 1930 to 1934)

"*Date of last exposure*    About November 27, 1941

"*Give date you quit work on account of occupational disease*    November 29, 1942

"*If you have returned to work give date*    have not returned to work.

"*Describe the cause of occupational disease in full*    Silicosis from long, continual exposure as miner in employ-

er's coal mine to silica dust from surrounding rock and silicosis impurities and streaks in the coal seam, progressing to disabling condition in November, 1942, a year after last exposure."

(It will be noted that the disease progressed to a disabling condition in November, 1942, and that he quit work on account of the occupational disease on November 29, 1942. It is conceded that the date of last exposure, November 27, 1941, should have been November 7, 1941.)

(9) On March 31, 1944, appellant verified a petition for rehearing before the joint board, in which he alleged that his silicosis "progressed to a disabling condition in November, 1942, about a year after the last exposure."

(10) On August 20, 1945, appellant verified a petition for a rehearing before the joint board on the question of whether the schedule of compensation effective December 3, 1942, was applicable to the case, and therein alleged:

"That due to the progressive nature of the disease, the condition did not become disabling until after December 3, 1942. That on or about November 29, 1942, the claimant who was then working in a shipyard developed a pneumonitis with a complicating pleurisy which is in itself not an occupational disease. That this condition cleared up and was followed by silicosis, an occupational disease which was not disabling until after the effective date of Referendum No. 22 increasing the compensation payable for occupational disease."

Five doctors testified, including Dr. John E. Nelson, who had examined the appellant on February 18, 1943, and Drs. H. A. Nichols, Byron F. Francis, and K. M. Soderstrom, who examined him on March 23, 1942, and Dr. William R. Broz. The matter of the date of disability was not in issue when Drs. Nichols, Francis, and Soderstrom testified, nor at the time when Dr. Nelson first testified, the question for determination being whether or not the appellant had silicosis. The only witnesses whose testimony was directed to determining the date of disability were Drs. Nelson and Broz. Dr. Nelson stated frankly that it was impossible to say on what date the silicosis developed to the extent that

it was disabling. We quote three short excerpts from his testimony:

"I don't see how you are going to differentiate a few days between the symptoms of his superimposed infection and silicosis. All we know is when the infection has subsided and the other symptoms keep going right ahead and aggravate, why then it is logical to assume it is no longer the pneumonitis causing the trouble but the main thing upon which it was imposed."

"Well, we know that he had—the pneumonitis developed on November 29th, that was when he had the sharp pain in the base of the left lung, well that is established and as far as we can tell from examination, his silicosis prior to that time wasn't giving him any real disturbance but after that it was, it seems to me that is about all I can say."

"I think his pneumonitis was severe enough to aggravate his silicosis to the point he became incapacitated."

We quote a final question and answer:

"Q. From the history you obtained from this man, doctor, however, what day did you think that his symptoms became so active as to be disabling, I mean, his chest symptoms from the history you got from him? A. Well, that would be November 29, 1942."

The department having made a determination that the date of disability was November 29, 1942, the appellant relied on the testimony of Dr. William R. Broz to sustain the burden of proving that the department was wrong. Dr. Broz had never seen appellant or examined his X rays, and had no direct knowledge of the case. He testified at length concerning the symptoms and effects of silicosis; but, if there is anything in his testimony to sustain that burden of proof, it is the following question and answer:

"Q. In your opinion if the claimant had not had this attack of pneumonia, would he have been disabled from work by reason of silicosis on November 29, 1942? . . . A. Probably not."

There was no background for this question except a long, hypothetical question to which an objection had been sustained.

But if such evidence were sufficient to support a finding by the jury that appellant was not disabled due to silicosis on November 29, 1942, and we do not hold that it was, the appellant still would not be entitled to a verdict. He must establish that the date of disability was December 3, 1942, or later.

There was no evidence of pneumonia in the X-ray photograph of February 9th, and the silicosis must have become the disabling factor sometime prior to that date. In fact, the conclusion would seem inevitable that silicosis must have become the disabling factor sometime prior to December 21, 1942, when appellant made his first report to the department of labor and industries claiming disability by reason of an occupational disease, although he was not able at that time to correctly identify the disabling disease.

If we give full effect to the testimony of Dr. Broz and eliminate the date of November 29th, when appellant was "probably not" disabled by reason of silicosis, it is impossible from this record to select any date between November 30, 1942, and December 21, 1942, as the date of disability as the result of silicosis on any basis other than conjecture.

██ Whether a case under the workmen's compensation act is tried to the court or to a jury, a claimant cannot overcome the decision of the department, which is *prima facie* correct, and sustain his burden of proof, unless he presents some evidence of probative value that takes the factual question involved out of the field of speculation and surmise. *Kralevich v. Department of Labor & Industries,* 23 Wn. (2d) 640, 161 P. (2d) 661; *Seattle-Tacoma Shipbuilding Co. v. Department of Labor & Industries,* 26 Wn. (2d) 233, 173 P. (2d) 786. Appellant failed to sustain the burden of proof of establishing that the date of disability due to silicosis was subsequent to December 2nd, and the trial court was fully justified in taking the case from the jury.

██ Appellant assigns as error the sustaining of an objection to a long hypothetical question purporting to give the work and medical history of the appellant and the find-

ings of various physicians, which question concluded with the following:

"You may assume that by order dated July 21, 1945 the Department of Labor and Industries classified Mr. Plese as totally but temporarily disabled by silicosis an occupational disease, as of November 29, 1942 when he had his attack of pneumonia while working in the shipyards. From this order the claimant asked for rehearing on one point only, whether his total disability for work from silicosis commenced coincidentally with his disability from pneumonia or at a later date. The point is material because a higher schedule of compensation became effective December 3, 1942 some four days after the pneumonia attack. Assuming these facts, and from your examination of the x-rays in the Department File at the successive times mentioned, in your opinion—I had better strike that, he hasn't been able to examine those. Assuming these facts and the report of x-ray examinations found in the file taken at the successive times indicated, in your opinion was the claimant totally disabled from work on November 29, 1942 by silicosis?"

The first three sentences quoted clearly had no place in the question. While we have no way of knowing how much an expert's judgment as to a man's disability on November 29, 1942, may hinge on the assumption of the fact that a higher schedule of compensation became effective four days later, we are convinced that it is not proper to insert it into the question. The trial court committed no error in sustaining the objection.

The assignment of error that the trial court sustained an objection to the question,

"And doctor the time which the disability manifests itself would be the time, would it not, doctor, when he would not longer be able to work because of the silicosis?"

seems to be much ado about nothing. After a long colloquy between counsel for appellant and the examiner representing the department, and after having the question reread, counsel said, "I will withdraw the question."

■ Appellant in his brief says that he

". . . submits the logical proposition that until a diagnosis is made that a man is suffering from silicosis, it

cannot be said that a prior disability can be caused there-from."

We can see nothing logical about such a proposition. An effort was made to support with testimony appellant's "logical proposition" that the date of disability was February 18, 1943, the date of the diagnosis of silicosis, but the questions were all objected to, the objections were sustained, and no assignments of error were predicated thereon.

It is apparent that, if there had been no change in the rate of compensation and if the department had taken the position that the date of total disability was the date of diagnosis, February 18, 1943, despite the fact that the man had been unable to work since November 29, 1942, the things said about the department would have had to be written on asbestos paper. "Illogical" would be the mildest of the terms applied, and quite properly so, because there is no justification in logic, law, or medicine for holding that a man should collect compensation for a disabling disease, progressive in character, only from the date that it was correctly diagnosed as such.

We find no merit in any of appellant's assignments of error, and the judgment of dismissal will be affirmed.

We have disposed of this case on the basis on which it was presented to us; but, from a study of the statutes involved and the cases construing them, particularly *Lynch v. Department of Labor & Industries,* 19 Wn. (2d) 802, 145 P. (2d) 265, we believe that there is a serious question as to whether referendum No. 22 was intended to apply to any but prospective employment and to injury sustained therein. Appellant admittedly never was employed after that act became effective.

Nor does the case of *Henson v. Department of Labor & Industries,* 15 Wn. (2d) 384, 130 P. (2d) 885, relied upon by the appellant before the department and on this appeal, hold in accordance with appellant's contention that, in cases involving occupational disease, the date of disability is the date of injury. It merely holds that the statute of limitations with reference to an occupational disease does not run from the date of last exposure. The court very carefully

avoided saying that the date of disability was the date of injury, and the strong intimation was that, while the date of injury was, as in the common-law case, the date of last exposure, the one-year statute of limitations from the date of injury contained in the workmen's compensation act (Rem. Rev. Stat., § 7686(d) [P.P.C. § 706-1]) was not applicable. The court there said:

"The claim for compensation under the workmen's compensation act is governed by the provisions of that act. Inasmuch as the legislature failed or refused to definitely apply the one-year limit to claims filed for occupational diseases, we must conclude that there is no statute governing the time in which a claim for injuries caused by an occupational disease may be filed."

We are entirely satisfied with the propriety and justice of the holdings in the *Henson* case, but we wish to make it clear that we did not there hold, so far as occupational diseases are concerned, that the date of. the disability was the date of the injury, nor did we there deny that the date of injury was the date of last exposure.

MALLERY, C. J., STEINERT, ROBINSON, and JEFFERS, JJ., concur.