[No. 57483-9.    En Banc.    June 27, 1991.]

THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*, v. ROBERT A. LANDON, *Respondent.*

*Kenneth O. Eikenberry, Attorney General,* and *John R. Wasberg, Assistant,* for appellant.

*Levinson, Friedman, Vhugen, Duggan, Bland & Horowitz,* by *William D. Hochberg,* for respondent.

JOHNSON, J. — Robert Landon's last job-related exposure to asbestos occurred on February 1, 1983. Landon developed an asbestos-related disease which manifested itself after July 1, 1986. Landon filed a workers' compensation claim. The Department of Labor and Industries calculated his benefits based on the schedule in effect on the date of his last exposure to asbestos.

Landon appealed, maintaining that his claim should be calculated based on the more favorable schedule in effect when his disease manifested itself over 3 years later. The Board of Industrial Insurance Appeals agreed with Landon. The Superior Court, on later review, granted summary judgment in the worker's favor.

We granted review and affirm the Board and the Superior Court. We hold that for claims filed prior to July 1, 1988, workers' compensation benefits for occupational diseases must be calculated as of the date the worker's

disease manifested itself, not the date of the worker's last exposure to the harmful materials.[1]

Benefits for workers disabled by occupational diseases are to be calculated in the same way as benefits for those injured on the job. RCW 51.16.040; former RCW 51.32.180. The law in effect on the *date of injury* governs the calculation of benefits for workers injured on the job. *Ashenbrenner v. Department of Labor & Indus.*, 62 Wn.2d 22, 380 P.2d 730 (1963); *Lynch v. Department of Labor & Indus.*, 19 Wn.2d 802, 145 P.2d 265 (1944). Hence, the date of injury determines which schedule of benefits is to be used in calculating a disabled worker's claim.

The date of injury, however, has no exact counterpart for workers who develop occupational diseases. The Industrial Insurance Act defines "injury" to include a "tangible happening" and an "immediate or prompt result." RCW 51.08-.100. Occupational diseases, however, do not manifest themselves immediately after a worker is exposed to harmful materials. Rather, years can pass between a worker's exposure and the manifestation of any disease.

We must decide whether the date of injury is the date when a worker is exposed to the harmful materials or when a worker's disabling disease first manifests itself. The Department argues that the key element of "injury" is the harmful exposure, and consequently maintains that the injury occurs on the date of the worker's last injurious exposure. Landon contends that an injury is not complete until the disabling disease manifests itself, and so proposes we use the date of manifestation.

■ Our analysis starts with the Industrial Insurance Act itself, portions of which equate "injury" with "disease".[2]

---

[1]This decision affects only claims filed before July 1, 1988. RCW 51.32.180 was amended in 1988 so that it now directs that the rate of compensation for *claims* filed on or after July 1, 1988, depends on the date the disease requires medical treatment or the date the disease becomes totally or partially disabling, whichever occurs first.

[2]*See, e.g.,* RCW 51.14.050(2), 51.16.040, 51.28.025, 51.32.030, 51.32.072, 51.32.075, 51.36.060, and 51.48.010.

These sections imply that the counterpart for "date of injury" should be "date of disease", requiring us to determine when a disease occurs. We find persuasive the Ninth Circuit's reasoning for concluding that under a federal workers' compensation act a disease does not occur until it manifests itself:

> Asbestosis begins when asbestos fibers become embedded in the lungs. The average person, however, would not consider himself "injured" merely because the fibers were embedded in his lung. Indeed, expert testimony presented to one court showed that "over 90% of all urban city dwellers have asbestos-related scarring." *Eagle-Picher Industries, Inc. v. Liberty Mutual Insurance Co.*, 682 F.2d 12, 19 (1st Cir.1982). Moreover, "even when the fiber has become embedded in the lung and the scarring process has begun, the end result, that is, disabling disease or death, is by no means inevitable." *Id.* at 18. Rather *the average person would consider himself injured when the asbestos fibers finally cause asbestosis* — a process that can take much longer than 20 years. *Id.* at 18. As Judge Learned Hand once wrote, the [Longshoremen's and Harbor Workers' Compensation Act] is
>
> > not concerned with pathology, but with industry disability; and *a disease is no disease until it manifests itself*. Few adults are not diseased, if by that one means only that the seeds of future troubles are not already planted; and it is a common place that health is a constant warfare between the body and its enemies; an infection mastered, though latent, is no longer a disease, industrially speaking, until the individual's resistance is again so far lowered that he succumbs.
>
> *Grain Handling Co. v. Sweeney*, 102 F.2d 464, 466 (2d Cir.), *cert. denied*, 308 U.S. 570, 60 S.Ct. 83, 84 L.Ed. 478 (1939).

(Italics ours.) *Todd Shipyards Corp. v. Black*, 717 F.2d 1280, 1289-90 (9th Cir. 1983), *cert. denied*, 466 U.S. 937 (1984).[3]

Support for using a date of manifestation may also be found in former RCW 51.32.180, in which the Legislature

---

[3]In response to *Black*, the Department reiterates this court's statement that "our Industrial Insurance Act is unique and the opinions of other state courts are of little assistance in interpreting our Act." *Dennis v. Department of Labor & Indus.*, 109 Wn.2d 467, 482-83, 745 P.2d 1295 (1987). Nevertheless, the federal and state acts similarly calculate occupational disease benefits according to the time of the "injury". The Department has not presented any meaningful difference between the federal and state statutes on this issue. Thus, there is no reason to ignore the Ninth Circuit's analysis.

establishes for compensation purposes that the counterpart of "injury" for occupational diseases is "disability". *See Dennis v. Department of Labor & Indus.*, 44 Wn. App. 423, 427, 722 P.2d 1317 (1986), *aff'd*, 109 Wn.2d 467, 745 P.2d 1295 (1987). This language implies that benefits should be calculated as of the date of disability, a date which is inherently tied to the date the disease manifests itself.

Washington's case law lends similar support to Landon's interpretation. In *Plese v. Department of Labor & Indus.*, 28 Wn.2d 730, 183 P.2d 1001 (1947), the court addressed a situation similar to the present case. A worker suffering from silicosis disagreed with the Department over the proper date to calculate his benefits. Both the worker and the Department analyzed this issue by looking to the date of disability. The Department argued that the worker was disabled when he could no longer work. The worker maintained that he was disabled when his disease was correctly diagnosed. *Plese*, at 731-32, 737. Although the court upheld the Department's position as to the timing of the disability, the importance of *Plese* here is its implicit holding that benefits are to be determined as of the date of disability, not the date of last injurious exposure. Hence, contrary to the Department's arguments,[4] *Plese* supports calculating benefits according to the date of manifestation.

Finally, the Industrial Insurance Act is to be liberally construed to insure disabled workers receive compensation. RCW 51.12.010; *Bolin v. Kitsap Cy.*, 114 Wn.2d 70, 72, 785 P.2d 805 (1990). The statutory policy of compensating disabled workers is better promoted by using schedules in effect on the date a disease manifests itself. Because of the

---

[4] The Department ignores *Plese*'s primary holding and focuses instead on a short passage at the end of that opinion. In that passage, the court in *Plese* distinguished an earlier case by stating that the earlier case contained a "strong intimation" that the time of injury was the worker's date of last injurious exposure. *Plese*, at 737-38. It is clear from the context of that statement, however, that the court was simply confirming the common law rule that a cause of action for occupational disease accrues on the date of the last injurious exposure. The court in *Plese* did not hold that benefits should be calculated as of the date of last injurious exposure.

nature of occupational diseases, schedules in effect on the date of last exposure are more likely to be outdated than schedules effective on the date a disease manifests itself. *See Black*, at 1289.

■ The Department presents a number of unpersuasive arguments in favor of using the date of last injurious exposure. First, the Department argues that its administrative decision to use the date of last injurious exposure should be accorded deference. *See, e.g., Multicare Med. Ctr. v. Department of Social & Health Servs.*, 114 Wn.2d 572, 589, 790 P.2d 124 (1990). In this case, the agency's interpretation conflicts with the statute, rendering deference inappropriate. *See Weyerhaeuser Co. v. Cowlitz Cy.*, 109 Wn.2d 363, 371-72, 745 P.2d 488 (1987); *State v. Dodd*, 56 Wn. App. 257, 260-61, 783 P.2d 106 (1989).

■ Second, the Department claims that the Legislature acquiesced in the Department's use of the last injurious exposure rule until the Legislature changed that rule in 1988. However, the Department presents no evidence that its interpretation had actually attracted the Legislature's attention before that amendment. *See Washington Fed'n of State Employees v. State Personnel Bd.*, 54 Wn. App. 305, 312-13, 773 P.2d 421 (1989).

■ Third, the Department argues that the Legislature's bill reports for the 1988 amendment to RCW 51.32.180 are relevant for interpreting the pre-1988 law. The Legislature amended RCW 51.32.180 to adopt the date of manifestation for all claims filed after July 1, 1988. The legislative bill reports from this 1988 amendment stated that previous law used the date of last injurious exposure to compute benefits to injured workers. Bill reports may be relevant in the interpretation of a statute being enacted, but they do not represent binding pronouncements of the state of the law existing before the enactment.[5]

---

[5]The Department adopted a regulation implementing this 1988 amendment. *See* WAC 296-14-350. The regulation's first section follows the legislative statement of prior law. This first section adopts the last injurious exposure rule for claims filed prior to July 1, 1988. For the reasons stated above, this regulation no longer is the law in this state.

Accordingly, we conclude that for claims filed prior to July 1, 1988, workers' compensation benefits should be calculated as of the date the disease manifests itself, not the date the worker suffered the last injurious exposure to the harmful material.[6] We recognize that the date of manifestation itself is open to differing interpretations. Such issues are not involved in the current case, however, so they await future resolution.

We affirm the trial court's summary judgment in Landon's favor.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.

---

[6]We conclude that the date of last injurious exposure should not be used in calculating a worker's benefits. However, we do not reject using this date in other circumstances, where appropriate. For example, today we have issued another decision in which we use the date of last injurious exposure to assign liability between successive insurers for occupational disease benefits. *See Weyerhaeuser Co. v. Tri*, 117 Wn.2d 128, 814 P.2d 629 (1991). Using the date an employee last suffered injurious exposure is appropriate in the context of assigning liability. However, where the issue is a disabled worker's proper compensation, the relevant event is not the original exposure but the onset of the disease.