947 P.2d 727 (1997)
133 Wash.2d 793
DOUBLE D HOP RANCH; Department of Labor and Industries, Respondents,
v.
Eduardo T. SANCHEZ, Petitioner.
No. 64561-2.
Supreme Court of Washington, En Banc.
Argued May 14, 1997.
Decided December 4, 1997.
*728 Charles Barr, Richland, Mary Ferguson, Seattle, for Petitioner.
Christine Gregoire, Atty. Gen., Leslie Johnson, Asst. Atty. Gen., Seattle, Christine Gregoire, Atty. Gen., Lesley Allan, Asst. Atty. Gen., Wenatchee, Halverson & Applegate, Linda Sellers, Yakima, for Respondents.
DURHAM, Chief Justice.
Eduardo Sanchez worked as a farm laborer and was laid off for approximately the same few months each year. He challenges a Court of Appeals decision affirming his employment classification as "exclusively seasonal in nature" for purposes of workers' compensation. In some cases, including employment that is "exclusively seasonal in nature," time-loss benefits are based on average monthly wages earned over a previous 12-month period. In cases where such income averaging does not apply, time-loss benefits are based on monthly wages the worker was receiving at the time of injury. Sanchez argues that his employment is not "exclusively seasonal in nature." We agree. The Court of Appeals decision is reversed and this matter is remanded to the Department of Labor and Industries (Department) for reclassification.

FACTS
Sanchez began working at Double D Hop Ranch (Double D) as a general laborer in 1988. In 1988, he worked from May through October. In 1989, he worked from February to early November. In 1990, he worked from February to November 9, when he was injured at work. Early in the year Sanchez would plant hops, pull and spray weeds, hoe, and dig. In the spring, he would repair twine, train vines on the twine, dig irrigation ditches, and drive a backhoe, loader, and water truck. During the fall harvest, he would pick hops and drive a truck. After the harvest, he would spread fertilizer, replace posts, and check wires and machinery. Historically, there was no work available for Sanchez at Double D from late November through late February of each year.
The Department classified Sanchez's employment as "exclusively seasonal in nature" and based his time-loss benefits on his average wages over a previous 12-month period pursuant to RCW 51.08.178(2). Sanchez appealed the Department's order to the Board of Industrial Insurance Appeals (Board), arguing that his employment was not "seasonal" for purposes of RCW 51.08.178(2) and that his time-loss benefits should, therefore, be based on his monthly wages at the time of injury pursuant to RCW 51.08.178(1).
The Board reversed the Department and held that Sanchez's employment was not exclusively seasonal in nature. The Board remanded the claim to the Department with directions to calculate Sanchez's time-loss benefits based on his monthly wages at the time of injury pursuant to RCW 51.08.178(1). Double D and the Department appealed to Yakima County Superior Court, which reversed *729 the Board. Sanchez appealed to the Court of Appeals, which affirmed.[1]

ANALYSIS
We review the Board's interpretation of the Industrial Insurance Act de novo to determine whether it has erroneously interpreted or applied the law.[2] Deference to an agency's interpretation of a statute is appropriate when the agency is charged with administering the statute.[3] However, deference is inappropriate when the agency interpretation conflicts with the statute.[4] At issue is the Board's interpretation of RCW 51.08.178, which provides in relevant part:
(1) For the purposes of this title, the monthly wages the worker was receiving from all employment at the time of injury shall be the basis upon which compensation is computed unless otherwise provided specifically in the statute concerned....
. . . .
(2) In cases where (a) the worker's employment is exclusively seasonal in nature or (b) the worker's current employment or his or her relation to his or her employment is essentially part-time or intermittent, the monthly wage shall be determined by dividing by twelve the total wages earned, including overtime, from all employment in any twelve successive calendar months preceding the injury which fairly represent the claimant's employment pattern.
The primary objective of statutory construction is to carry out the Legislature's intent.[5] The purpose of time-loss compensation is to reflect a worker's lost earning capacity.[6] Therefore, we should construe RCW 51.08.178 in a way that will most likely reflect a worker's lost earning capacity. Yet, we should remain mindful that the Industrial Insurance Act is remedial in nature and should be liberally construed, with doubts resolved in favor of the worker.[7]
In its decision below, the Board defined "seasonal" employment as "work which is dependent on a season of a year."[8] In ruling that Sanchez's employment was not "exclusively seasonal in nature," the Board reasoned:
... Mr. Sanchez worked most, if not all, of three seasons of the year (spring, summer, and fall), and even worked a portion of the winter season. Such a worker as Mr. Sanchez, whose work is such that it transcends the seasons and is clearly not defined by the seasons, cannot have such work classified as "exclusively seasonal in nature."[[9]]
Sanchez urges us to adopt the Board's definition of "seasonal," which is limited to the four calendar seasons of the year. He reasons that since his work overlapped some of the boundaries of the calendar seasons, his employment could not have been dependent on a single season.
Sanchez has offered no reason why the Legislature would intend that an alternative wage calculation method be applied to persons whose work happened to fall exclusively within the boundaries of one of the four calendar seasons, but not to those whose work overlapped these boundaries yet still fell short of year-round employment. Under the Board's definition of "seasonal employment," two fruit pickers working in the summer would be classified differently if one of them happened to work one day past the autumnal equinox. We can discern no reason *730 the Legislature would intend for different wage calculation methods to apply based on such an arbitrary distinction. This court will not construe statutes in a way that leads to unlikely, absurd, or strained results.[10]
The Department, on the other hand, reads "seasonal" as being dependent on a "season" in the broader sense of the word. It is commonly understood that there is a holiday season, a baseball season, and growing seasons for crops. This broader concept of "season" is consistent with the most applicable dictionary definition of "season," which is "a period of the year set off or conceived of as set off by a particular and usu[ally] high level of activity in some field (as social, cultural, or business)."[11] More importantly, this broader definition furthers the legislative intent to base time-loss benefits on a worker's lost earning capacity, since the earning capacity of a worker whose employment is for a period of less than a full year is better represented by wage averaging. We hold that "seasonal" employment for purposes of RCW 51.08.178 is employment that is dependent on a period of the year that is characterized by a particular activity.
In order for Sanchez's employment to have been "exclusively seasonal in nature," the nature of his employment would have to have been entirely dependent on a period of the year that is characterized by a particular activity. Some of Sanchez's work, like planting and picking hops, was dependent on the hop growing season. However, Sanchez also performed general farm labor, like maintenance and repair work, and Double D concedes that it employs general laborers to perform similar tasks year round. Sanchez's employment, therefore, cannot be said to have been exclusively seasonal in nature. Thus, although the Board's definition of "seasonal" is too narrow, the Board correctly determined that Sanchez's employment was not exclusively seasonal in nature for purposes of RCW 51.08.178(2).
We note, however, that the Board erred in ordering Sanchez's employment classified under RCW 51.08.178(1). The sole question before the Board was whether Sanchez's employment was exclusively seasonal in nature for purposes of RCW 51.08.178(2). Yet, the Board not only ruled that Sanchez's employment was not "exclusively seasonal in nature" for purposes of RCW 51.08.178(2)(a), but also ordered the Department to calculate Sanchez's monthly wage under RCW 51.08.178(1). Thus, the Board prohibited the Department from considering whether Sanchez's employment, though not "exclusively seasonal in nature," should nevertheless be subject to wage averaging under RCW 51.08.178(2)(b). This was error.
Although Sanchez's employment is not exclusively seasonal in nature, it is yet unresolved whether his "employment or his ... relation to his ... employment is essentially part-time or intermittent" and therefore subject to wage averaging under RCW 51.08.178(2)(b). Because the only issue before the Board was whether the Department erred in classifying Sanchez under RCW 51.08.178(2)(a), the Board should have confined itself to that issue in its remand order.
The Court of Appeals is reversed and the decision of the Board is modified and remanded to the Department for reclassification.[12] Pursuant to RCW 51.52.130, Sanchez shall recover reasonable attorney fees from the Department.
DOLLIVER, GUY, TALMADGE and SANDERS, JJ., concur.
JOHNSON, Justice (concurring in part, dissenting in part).
This case presents the question of whether a general labor farmworker can be classified as an exclusively seasonal worker under RCW 51.08.178. While I agree with the majority's interpretation of what constitutes an exclusively seasonal worker, I write separately to emphasize that case law from other jurisdictions supports that determination. *731 Further, I disagree with the majority's belief that the question remains unresolved whether Sanchez' employment is part-time or intermittent and that he may be subject to wage averaging.
The general rule is established under RCW 51.08.178, which requires the monthly wages the injured worker was receiving at the time of injury be the basis for compensation unless otherwise provided for specifically in the statute. I would hold the specific exceptions provided for seasonal or intermittent employees do not apply in this instance. The majority's decision to remand this case and to focus on the exceptions undermines the general rule.
The Industrial Insurance Act is remedial in nature and its beneficial purpose should be liberally construed in favor of the beneficiaries. Sacred Heart Med. Ctr. v. Department of Labor & Indus., 92 Wash.2d 631, 635, 600 P.2d 1015 (1979); Wilber v. Department of Labor & Indus., 61 Wash.2d 439, 446, 378 P.2d 684 (1963). The purpose of the Industrial Insurance Act is to compensate employees for lost earning capacity based on wages at the time of injury. The specific purpose of RCW 51.08.178 is to provide a basis upon which to compute the monthly wage of any worker covered under the industrial insurance statute. RCW 51.08.178(1) covers workers, part-time or full-time, who "normally" work on a regular schedule. Under this section, monthly wages at the time of injury are used to compute compensation. This is the general rule.
In contrast, RCW 51.08.178(2)(a) is an exception to the general rule and covers workers whose work is exclusively seasonal. This section provides a formula for monthly wage averaging by taking the seasonal wages earned and dividing by 12. The result of this computation is the average monthly wage for benefit calculation.
While the majority reaches the correct result, I feel obligated to emphasize we are not alone in our definition of an exclusively seasonal employee. Case law from other jurisdictions supports the majority's analysis of the statute and the conclusion that Sanchez is not an "exclusively seasonal employee." These jurisdictions find seasonal employment refers to occupations and tasks which can be carried on only at certain seasons or fairly definite portions of the year. Seasonal employment does not include such occupations which may be carried on throughout the entire year. In Nilson v. Clay County, 534 N.W.2d 598 (S.D.1995), the issue before the court was whether an election judge's benefits should be calculated under seasonal employment since the election judge was required to perform services only when an election was held. Nilson, 534 N.W.2d at 601. The court held because an election could arise at any time throughout the year, the position is not dependent upon the seasons. Nilson, 534 N.W.2d at 601. Similarly, in Murillo v. Payroll Express, 120 N.M. 333, 901 P.2d 751 (1995), the court was asked to determine if logging was seasonal employment. Murillo, 120 N.M. at 342, 901 P.2d 751. The court stated seasonal employment refers to labor which can be carried on only at certain seasons or regularly recurring periods throughout the year. Murillo, 120 N.M. at 342, 901 P.2d 751. The court went on to say seasonal employment does not include activities which can be carried on essentially year round despite occasional interruptions. The court held logging was not seasonal employment despite the lack of work when the forest roads were closed due to wet conditions or logging stopped because the forest was dangerously dry creating a high risk of fire. Murillo, 120 N.M. at 342, 901 P.2d 751. Finally, in Pacey v. Industrial Comm'n, 93 Ariz. 1, 377 P.2d 1015 (1963), the issue before the court was whether evidence supported the commission's finding that work as a welder's helper was limited to six months out of the year. The court found because the worker had a trade or skill customarily used throughout the very large construction industry, there was no real basis for the claim that the worker was restricted to work opportunities in the pipeline construction industry only. Pacey, 93 Ariz. at 3-4, 377 P.2d 1015. I do not suggest we blindly follow these other jurisdictions, but acknowledging the consistency in interpreting a similar statute strengthens our holding.
Our mandate, as stated above, is to construe the statute for the benefit of the injured *732 worker. Only if the statutory exceptions clearly apply should the general rule be discarded. When we apply the pertinent definition and analysis of "exclusively seasonal employment" to the facts of this case, Sanchez' situation is not governed by RCW 51.08.178(2)(a). Sanchez was employed as a general farm laborer. In the early months of 1990, Sanchez planted and cultivated hops, dug ditches, drove a tractor, and performed other odd jobs. In the spring, Sanchez monitored the progress of the crops and drove a backhoe, a loader, and a truck. In the fall, during harvest, he drove a truck and worked on a hop picker. After harvest, he spread fertilizer, replaced posts, and checked wires and machinery. He did perform different tasks depending on the time of year, which is to be expected on a farm, but as a general laborer, he also performed work unrelated to the season or the weather. The work Sanchez performed was available throughout the year, and he worked throughout the year. Sanchez was not hired to plant during the planting season and harvest during the harvest season. Sanchez was hired to work on the farm as a general laborer throughout the year. Finally, like the welder's assistant in Pacey, Sanchez' employment as a general laborer in the large agricultural industry is not restricted to work opportunities available only on a hop farm.
I disagree with the majority's decision to remand this case to the Department for a determination of whether Sanchez' employment is part-time or intermittent because the parties have not addressed these issues and remand is not necessary. The majority erroneously reasons the Board's classification of Sanchez under the general rule prohibited the Department from determining whether Sanchez fit under other exceptions. The Department had the initial opportunity to determine whether Sanchez should be classified as an intermittent or part-time employee under RCW 51.08.178(2)(b) and determined he should not. The Board correctly determined the general rule applied to Sanchez; therefore, remand is not necessary. I point out also that at no time in these proceedings has the Department argued that any other exception applies. Likewise, the parties have not raised or briefed that issue. Finally, under the facts of this case, Sanchez is not an intermittent or part-time employee. While I feel the Board will have no problem reaching the same result on remand, since no one raised the issue, I would affirm the decision of the Board.
ALEXANDER, MADSEN and SMITH, JJ., concur.
NOTES
[1] Double D. Hop Ranch v. Sanchez, 82 Wash.App. 390, 918 P.2d 174 (1996).
[2] RCW 34.05.570(3)(d).
[3] Multicare Med. Ctr. v. Department of Soc. & Health Servs., 114 Wash.2d 572, 589, 790 P.2d 124 (1990).
[4] Department of Labor & Indus. v. Landon, 117 Wash.2d 122, 127, 814 P.2d 626 (1991).
[5] Rozner v. City of Bellevue, 116 Wash.2d 342, 347, 804 P.2d 24 (1991).
[6] See Kirkpatrick v. Department of Labor & Indus., 125 Wash.2d 222, 230, 883 P.2d 1370, 915 P.2d 519 (1994).
[7] Black v. Department of Labor & Indus., 131 Wash.2d 547, 555, 933 P.2d 1025 (1997).
[8] Clerk's Papers at 142 (Proposed Decision and Order, Bd. of Indus. Ins. Appeals No. 91 6500, at 4 (Nov. 13, 1992)).
[9] Id.
[10] State v. Stannard, 109 Wash.2d 29, 36, 742 P.2d 1244 (1987).
[11] Webster's Third New Int'l Dictionary 2049 (1986).
[12] See RCW 51.52.115 (court shall remand to Department upon reversal or modification of Board decision).